WALTER J. BALL AND MORISON R. WAITE, COEXECUTORS, ESTATE OF OPHELIA DUHME, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6858. Promulgated September 22, 1927.

Loss sustained in 1920 on sale of property acquired prior to March 1, 1913, for residence purposes, but abandoned for such use in 1911 and thereafter rented and held for sale, *held* deductible. *Tindle* v. *Heiner*, 18 Fed. (2d) 452.

*Morison R. Waite, Esq.*, for the petitioners.
*W. F. Gibbs, Esq.*, for the respondent.

This appeal is from the determination of a deficiency in income taxes for the calendar year 1920 in the amount of $5,539.22, only a part of which is in controversy.

### FINDINGS OF FACT.

Ophelia Duhme died testate in 1921, a resident of Cincinnati, Ohio. The petitioners are the executors of her will. On April 24, 1889, Ophelia Duhme purchased a lot of ground in the City of Cincinnati, Ohio, having a frontage of 195 feet by a depth of 320 feet, for which she paid the sum of $15,000. On the 27th day of July, 1891, she entered into a contract for the construction of a residence on said lot, at a cost of $26,600. This house she occupied as a residence from the date of its completion until May or June, 1911. On April 1, 1892, she purchased the adjoining 60 feet of ground. The purchase price of this lot is not shown, except to the extent that she assumed and paid a mortgage for $2,200, then a lien on the land. The value of the property on March 1, 1913, was $36,500, the lot being then worth $23,000 and the house and outbuildings being worth $13,500. The March 1, 1913, value was less than the cost. In the early part of the summer of 1911, Ophelia Duhme definitely abandoned this property as a residence. She then determined to sell the property and until it could be sold to lease it. The property was under lease from 1911 until 1920, when it was sold for $22,500. The residence was a large brick house, two stories, an attic and basement. There were also certain outbuildings, but of what construction does not appear. The residence and outbuildings depreciated after March 1, 1913, to the extent of 2 per cent per annum, making a total allowance for depreciation on these buildings of $1,890.

In 1920 Mrs. Duhme sold two farms in Indiana, and in her income-tax return for that year she reported a profit of over $9,000 incident to their sale. The respondent increased the amount of the profit on the sale of these two farms by decreasing their March 1, 1913, value. Petitioner acquiesced in the action of the respondent in this particular.

The respondent disallowed the loss claimed by Mrs. Duhme on the sale of her residence on the ground that the loss did not result from a transaction entered into for profit.

### OPINION.

ARUNDELL: The petitioners contend that they should be permitted to deduct from the gross income of the decedent for the year 1920 the loss she suffered by reason of the sale in that year of the property which prior to June, 1911, had been occupied by her as a residence

and since that date had been regularly rented and was at all times offered for sale. Section 214 (a) (5) of the Revenue Act of 1918 provides that in computing net income there shall be allowed as deductions, " Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business."

The United States Circuit Court of Appeals for the Third Circuit, at its March, 1927, term, decided the case of *Tindle* v. *Heiner*, 18 Fed. (2) 452, which case is on all fours with the instant appeal. The facts in that case were that in 1887 and 1888 the late Senator Philander C. Knox purchased a lot of ground in the City of Pittsburgh, and built a residence thereon at a total cost for both grounds and house of $172,000. In 1901 he abandoned the property as a residence and leased it. Its first lease began in October, 1901, and ran for 3½ years. He then leased it for 10 years and thereafter for shorter terms until the property was sold in 1920 for $73,706.79. The court held that the loss arising from the sale of the house was deductible by the taxpayer under the same section of the same Revenue Act which is involved in this case. Among other things the court said:

With the giving up of his residence all sentimental connection in the use of the house as a home ended and thereafter the use of the property was by others under lease from him during the running of the first lease for three years, to-wit from October 1, 1901, and then from April 1, 1905, for ten years. During the running of these leases he was of course unable to sell the property by reason of the use he was making of it and the leases he had given for his own profit. Such being the status of the transaction, the ordinary one of owning real estate for leasing purposes, the situation of the property under the second or ten-year lease when the income tax law of 1913 was passed, was a distinctly nonresidential and distinctively business leasing of real estate for profit. We think we are justified in regarding the transaction here involved by its then and subsequent status. The situation was in no wise different than it would have been had he always owned and used the property for renting purposes and never for residential purposes, because the residential use had finally and forever ceased at the time of the passage of the income tax law. What then was the fact and status in money value of this property when the income tax law of 1913 was passed? It was a distinctively renting transaction and in this transaction was involved the use for renting of property of the agreed upon then value of $120,000. Any system of bookkeeping in this transaction would have had charged against it an investment of $120,000 represented by real estate and the rents upon the same would have been profits. What then would have been the result of this transaction when it was finally closed? Clearly instead of profits a loss represented by the shrinkage in value of the property during that time of $46,293.21.

But, assuming the situation was one where some might contend, as did the Court below, that the language of Congress was intended to treat the transaction as a purchase and sale of property without reference to what its use was during the interim, it seems to us the opposite view might reasonably be taken of hold-

ing Mr. Knox's tenure as made up of two transactions, one, the residential one, which had ceased to exist long before and to which the law did not apply, the other, a purely business venture, unfortunate in its results, but one which the law fairly contemplated should be off-set against other items of income which the owner of the property sustained. It seems to us, therefore, with this double interpretation in the balance that the law would then resolve that uncertainty against the government in favor of the taxpayer. Assured as we are that this latter transaction was one entered into and carried on for profit, the decedent in the assessment of his net income should have been allowed credit for the loss resulting therefrom.

As in the *Knox* case, petitioner had, prior to March 1, 1913, abandoned all sentimental connection with the premises as a whole, and on that date held the property distinctly as a business proposition. Under such circumstances and on authority of the circuit court of appeals decision in the *Knox* case quoted above, we are of the opinion that the respondent erred in refusing to permit petitioner to deduct the loss resulting from the sale of the property as a deduction from gross income for the year 1920. The proper basis for ascertaining the loss is the value of the property on March 1, 1913, since the value on that date is lower than cost. *United States* v. *Flannery*, 268 U. S. 98; *McCaughn* v. *Ludington*, 268 U. S. 106. Depreciation should be computed at 2 per cent. *Appeal of Helen Converse Thorpe*, 3 B. T. A. 1006.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*